SOUTHGATE BANK *v.* STATE BANKING COMMISSIONER.

OPINION OF THE COURT.

1. BANKS AND BANKING—FINANCIAL INSTITUTIONS ACT—TRANSFER OF LOCATION—APPROVAL BY BANKING COMMISSIONER—REQUIREMENTS OF ACT.

A bank may amend its articles to provide for change in location if the bank meets the requirements of the financial institutions act for the establishment of a bank in the new location without being subject to the discretionary approval of the State banking commissioner (CL 1948, § 487.39).

2. SAME—FINANCIAL INSTITUTIONS ACT—TRANSFER OF LOCATION.

Finding of trial court that change of location of plaintiff bank was not subject to the banking commissioner's discretionary approval because plaintiff bank met the minimum capitalization requirements of proposed new location, and the new city had an inadequate number of banks, *held*, proper, where (1) the banking department had taken position for 24 years that change of location was not a matter within commissioner's discretion, (2) when the statutory provision was adopted, it specifically omitted the requirement of administrative approval of changes in location found in national banking act on which

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 4, 5, 16]  10 Am Jur 2d, Banks § 26.
[3]  2 Am Jur 2d, Administrative Law § 241.
[6]  10 Am Jur 2d, Banks §§ 10, 13–17.
[7]  10 Am Jur 2d, Banks § 36.
[8]  5 Am Jur 2d, Appeal and Error § 1009.
[9, 10]  50 Am Jur, Statutes §§ 217, 219, 220, 223, 224.
[11]  10 Am Jur 2d, Banks §§ 7, 8, 10–19.
[12]  10 Am Jur 2d, Banks §§ 17, 26.
[13]  16 Am Jur 2d, Constitutional Law §§ 261, 262.
[14]  16 Am Jur 2d, Constitutional Law §§ 273, 275.
[15]  5 Am Jur 2d, Appeal and Error § 839; 10 Am Jur 2d, Banks § 36.

statute the act was largely based, and (3) the language of the financial institutions act requires issuance of certificate of change of location upon bank meeting requirements of act (24 Stat 18; CL 1948, § 487.39).

3. STATUTES—ADMINISTRATIVE INTERPRETATION.

Administrative interpretation given a statute over a period of years should be given great weight.

4. BANKS AND BANKING—STATUTORY CONSTRUCTION—TRANSFER OF LOCATION—APPROVAL OF BANKING COMMISSIONER.

Provision of financial institutions act that commission *shall* issue to a bank which has amended its articles properly a certificate of change of location, limited only in that the bank must meet the requirements of the act for the establishment of a bank in the new location, *held*, to require issuance of the certificate of change, since the requirements mentioned, admittedly met by plaintiff bank, are questions of fact, not administrative discretion (CL 1948, § 487.39).

5. SAME—AMENDMENT OF ARTICLES—APPROVAL OF BANKING COMMISSIONER.

Section of financial institutions act which requires approval by banking commissioner of all amendments of articles of incorporation but contains no standard or test by which approval is to be denied or granted, other than consistency with other provisions of the act, may not be used to deny plaintiff bank a right which another section of the act provides, since the proposed amendments are not inconsistent with any other section of the act, and, since banking commissioner admits full compliance with all the procedural requirements of the section, approval may not be withheld (CL 1948, §§ 487.26, 487.98).

6. SAME—REVIEW OF BANKING COMMISSIONER'S DETERMINATION.

Proceedings under the suits and proceedings section of the financial institutions act are not an appeal from adversary proceedings before an administrative tribunal, and the section gives the circuit court power to make any order which it shall deem to be proper in accordance with the facts and law (CL 1948, § 487.21).

7. APPEAL AND ERROR—REVIEW IN CIRCUIT COURT.

Finding of trial court that denial by banking commissioner of plaintiff bank's application to increase its capital was unreasonable on the preponderance of the evidence *held* proper, where review of the record indicates that such finding is not clearly erroneous (CL 1948, §§ 487.21, 487.50; GCR 1963, 517-.1).

8. Costs—Public Question—Banks and Banking.

No costs are allowed in suit to change location, name, and capitalization of a bank, a public question being involved.

Dissenting Opinion.

Lesinski, C. J.

9. Statutes—Financial Institutions Act—Construction of Entire Act.

*One section of the financial institutions act cannot be read standing alone, but must be read in the light of the entire act and the legislative intent expressed therein, and an appellate court is required to give every part of an act its logical meaning intended by the legislature (CLS 1961, §§ 8.3, 8.3a; CL 1948, § 487.1 et seq.).*

10. Same—Construction—Giving Effect to Whole Statute.

*Statutes should be so construed, if possible, as to give full effect to every part and render no portion nugatory, every clause and word being presumed to have some force and meaning.*

11. Banks and Banking—Financial Institutions Act—Purpose of Legislation.

*The financial institutions act sought to register banks, and to effectively regulate the conduct of the banking business in this State, including the location, capitalization, and fitness of management by submission of regulation thereof to supervision of the State banking commissioner (CL 1948, § 487.1 et seq.).*

12. Same—Previous Administrative Interpretation—Waiver of Hearing.

*Contention that banking commissioner had supported plaintiff's position that change of location was not within discretionary approval of commissioner in previous practice held, not adequately supported, since the commissioner has, and had, authority to waive hearings when he is satisfied from the information contained in his records and investigations made previously by his department.*

13. Constitutional Law—Police Power—Delegated Power—Regulation of Trades, Occupations, and Professions—Discretion of Officers.

*Police power, inherent in the State, is incapable of being defined and subjected to limitation in the abstract, but its exercise in any given direction, such as the regulation of trades, occupations, and professions, is capable of definite expression, and*

*must, if delegated to a commission or administrative board, be defined in its purpose and the means of attainment thereof, in language leaving no wide administrative discretion, and no discretion at all of a legislative nature.*

14. Same—Police Power—Legislative Policy—Administrative Boards.

*The power to carry out a legislative policy enacted into law under the police power may be delegated to an administrative board under quite general language, so long as the exact policy is clearly made apparent, and the board may carry out in its action the policy declared and delegated, but it cannot assume it has been vested with power beyond express legislative delegation.*

15. Appeal and Error—Review in Circuit Court.

*Findings of the trial court that denial by banking commissioner of plaintiff bank's application to increase its capital stock was unreasonable on the preponderance of the evidence is sustained on appeal, where review of record indicates that such findings are not clearly erroneous (CL 1948, §§ 487.21, 487.50; GCR 1963, 517.1).*

16. Same—State Banking Commissioner—Approval of Change of Location.

*Error was committed by trial court in dismissing as unnecessary the approval of defendant State banking commissioner for change of location and thus ignore the need for fulfillment of the requirements of section of financial institutions act pertaining to such a change (CL 1948, §§ 487.21, 487.26).*
See headnote 8.

Appeal from Wayne; Gilmore (Horace W.), J. Submitted Division 1 December 8, 1965, at Lansing. (Docket No. 879.)   Decided May 11, 1966.   Leave to appeal granted by Supreme Court June 21, 1966. See 378 Mich 720, 379 Mich 1, 380 Mich 282.

Complaint by Southgate Bank, a Michigan banking corporation, against Charles D. Slay, State Banking Commissioner, to rescind and restrain enforcement of defendant's order denying plaintiff's applications to change name of bank, change location of bank, and increase capital stock of bank.

Judgment for plaintiff. Defendant appeals. Affirmed.

*Wm. Henry Gallagher* and *Reymont Paul,* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Maurice M. Moule,* Assistant Attorney General, for defendant.

McGregor, J. The plaintiff Southgate Bank, since its organization in 1958, has operated within the city of Southgate, in Wayne county. The bank met with annual losses from the start with resultant dissension among and frequent changes of directors. Losses had reached $80,000 by 1962, by which time the responsibility of managing the bank devolved upon Joseph Aubin. His family owned about 50% of the stock, and he served the bank without any pay.

In August, 1962, William Verhelle became a director and the president of the plaintiff bank. Aubin, as chairman of the board, continued as the chief officer of the bank until January, 1964, when he ceased to be an officer or director, and Verhelle became responsible for the management of the bank. In 1963, for the first time. the bank made a profit, which amounted to $2,768.04.

Pursuant to a resolution of its board of directors, the plaintiff bank made three applications to the State banking department, all of which were received September 28, 1964. First, approval was requested to change the location of the bank from the office in the city of Southgate, in Wayne county, to premises on the easterly side of Dequindre road, just north of Eight Mile road in the city of Warren, in Macomb county. The second was for approval of

an increase in the capital stock of the bank, from
$200,000 to $800,000 by the issuance and sale of an
additional $600,000 worth of common stock.     Third,
approval was requested for a change in the corpo-
rate name, from Southgate Bank, to Tri-City Bank.

At a meeting on October 29, 1964, the shareholders
of the plaintiff bank, by a two-thirds majority, voted
to amend the articles of incorporation by changing
the name and the location and increasing the capital
stock, in accordance with the applications made to
the banking department, required by section 98 of
the Michigan financial institutions act.[1]   CL 1948,
§ 487.98 (Stat Ann 1957 Rev § 23.851).   Subsequent-
ly, by letter of November 27, 1964, the commissioner
of the banking department informed the plaintiff
bank that all three applications had been disap-
proved.

On November 30, 1964, the plaintiff bank insti-
tuted this action against the defendant commission-
er, in the circuit court for Wayne county, demanding
that the defendant commissioner be ordered to issue
certificates approving the change of name and loca-
tion and the increase in capital stock.

The defendant commissioner's answer stated three
reasons for denial of the plaintiff's applications:
first, defendant was not satisfied as to necessity for
another bank at the proposed site; second, defendant
was not satisfied that the said plaintiff could suc-
cessfully operate in the new location; and third,
defendant was not satisfied with the management
and the responsibility and fitness of the applicants,
as illustrated in part by its refusal to comply with
the requests of defendant with respect thereto, and
further illustrated by internal dissension between
directors, officers, and employees of the plaintiff
bank.

At trial, before the court without a jury, the de-
fendant commissioner introduced into evidence the

---

[1] PA 1937, No 341.—REPORTER.

bank examiner's report, dated February 3, 1964, which questioned the wisdom of some of the plaintiff's loans and the legality of others. The examiners reported that the bank had unwise concentrations of credit, in that six persons were obligors or indorsers of obligations amounting to 50.2% of the plaintiff bank's total loan portfolio. The report stated also that a loan of $11,000 was secured by a mortgage on unimproved real estate, in violation of section 73 of the Michigan financial institutions act. (CLS 1961, § 487.73 [Stat Ann 1961 Cum Supp § 23.823]). The report further indicated that certain groups of loans exceeded 10% of the bank's capital and surplus, in violation of section 74 of the act. CLS 1961, § 487.74 (Stat Ann 1957 Rev § 23-.824).

The commissioner also testified that 54.7% of the loans outstanding of the plaintiff bank are to 9 or 10 different borrowers. He stated that making smaller loans to a greater number of people is more prudent banking because of the diversification. On cross-examination, he conceded that an increase in capital would protect depositors more and would change the concentration of loans.

Mr. Leland M. Ross, vice-president of the Federal Reserve Bank of Chicago, testified that the plaintiff bank was in violation of one of the conditions for membership in the Federal Reserve System because of lack of regard for the safety of its depositors by virtue of the number of large concentrations of credit in the hands of a few borrowers. He testified that the loan concentration practice of the plaintiff was imprudent banking and that it was reasonable and proper for the State banking commissioner to consider this practice as a factor in determining the responsibility and fitness of the management. On cross-examination, he conceded that an increase in capital stock would entirely change the character of

these loans as concentrations of credit. He also testified, however, that the increase in capital would not correct the loan concentration if the bank continued to make large loans to a few borrowers.

The circuit court granted judgment for the plaintiff bank, requiring the defendant commissioner to grant all three applications. The court rendered no decision as to whether or not the plaintiff was in violation of sections 73 and 74 of the Michigan financial institutions act. These issues were not raised in the pleadings and they are irrelevant to this action in view of the decision herein.

The first problem presented for resolution on appeal is the meaning of section 39 of the Michigan financial institutions act. This section reads as follows:

"Any bank *may* amend its articles of incorporation in the manner set forth hereinafter in section 98 to provide for change in the place where its operations are carried on to any other place within the State; Provided, That the bank in its new location shall meet the requirements of this act for the establishment of a bank in that location. When the bank has so amended its articles, the commission *shall* issue to the bank a certificate of change of location." CL 1948, § 487.39 (Stat Ann 1957 Rev § 23.767). (Emphasis supplied.)

Plaintiff bank contends that approval of the commissioner is not necessary for a transfer of location, since the plaintiff bank meets the capital requirements for the establishment of a bank in that particular location.[2] The defendant commissioner,

---

[2] Section 40 of the act provides a schedule of minimum capital requirements for new banks which increases as the population of the place in which the bank is to be located increases. CL 1948, § 487.40 (Stat Ann 1957 Rev § 23.771). The capital minimum required for location in a city between 100,000 and 300,000 in population is $200,000.

on the other hand, contends that, to be transferred to a new location, the bank must meet the requirements of the act for the establishment of a new bank in that location, which requires an investigation by the commissioner of the financial affairs of the applicants, and also requires that the applicants satisfy the commission as to their responsibility and fitness, the necessity for the bank, and its likelihood of success.[3] The circuit court found that the plaintiff bank had a capital of $200,000 and a surplus of $40,000 and that the city of Warren had a population of approximately 160,000. Accordingly, the trial judge held for the plaintiff that change of location was not subject to the commissioner's discretion.

It is the duty of the court to implement the legislative intent in the construing of statutes. If it be sound policy to subject the relocation of banks to the discretionary approval of the commissioner, such determination is for the legislature, not the judiciary.

This Court finds that the trial court's decision on this issue is supported by three sound reasons. First, from the time of the enactment of the statute in 1937, until 1960, the commissioner of the banking department had taken the same position on the meaning of section 39 as plaintiff now takes. The administrative interpretation given to a statutory section over a period of years should be given great weight. *Wyandotte Savings Bank* v. *State Banking Commissioner* (1956), 347 Mich 33. Secondly, the Michigan financial institutions act is largely based on the national bank act. 12 USCA, § 21 *et seq.* When section 39 of the Michigan act was adopted, it specifically omitted language requiring admin-

---

[3] Section 26 of the act, CL 1948, § 487.26 (Stat Ann 1957 Rev § 23.754).

istrative approval of change of location in the corresponding section of the national banking act.[4]

"Any national banking association may change its name or the place where its operations of discount and deposit are to be carried on, to any other place within the same State, not more than thirty miles distant, *with the approval of the comptroller of the currency,* by the vote of the shareholders owning two-thirds of the stock of such association. A duly authenticated notice of the vote and of the new name or location selected shall be sent to the office of the comptroller of the currency, *but no change of name or location shall be valid until the comptroller shall have issued his* certificate of approval of the same." 24 Stat 18 (12 USCA, § 30).[5] (Emphasis supplied.)

Thirdly, the very language of section 39 would seem to belie the contentions of the defendant commissioner. That section states that when the bank has amended its articles in compliance with section 98 of the Michigan financial institutions act (CL 1948, § 487.98 [Stat Ann 1957 Rev § 23.851]), the commission *shall* issue to the bank a certificate of change of location. The only proviso is that the bank must meet the requirements of the act for the establishment of a bank in the particular proposed new location. The first requirement is the minimum capitalization specified in the next section of the act, section 40 (CL 1948, § 487.40 [Stat Ann 1957 Rev § 23.771]). The other requirement is that the establishment of the bank in the new location would not result in more than one bank or branch bank per 3,000 population as provided in section 26 of

---

[4] Evidently the Michigan legislature has recognized the need for the State banking commissioner to exercise his discretion as to the change of location of a bank. See, currently, as amended by PA 1966, No 23, approved April 22, 1966, effective immediately.

[5] See, currently, as amended, 73 Stat 451 (1959), (12 USCA 1965 Cum Supp § 30).—REPORTER.

the act (CL 1948, § 487.26 [Stat Ann 1957 Rev § 23.754]). These requirements are questions of fact, not administrative discretion. The defendant commissioner does not contend that the plaintiff bank's proposed move to Warren would violate requirements of section 26. The trial court found that the city of Warren had an inadequate number of banks.

The defendant commissioner argues that since the plaintiff bank's three applications require amendment of the articles of incorporation, and section 98 of the act requires commission approval of such amendments, therefore, relocation of the bank under section 39 is subject to the commissioner's discretionary approval. This Court declines to allow the defendant commissioner to use section 98 as a means to deny a right which another section of the act provides. Although section 98 subjects amendments of the articles to approval by the commission, it contains no standard or test by which this approval is to be denied or granted, other than consistency with the other provisions of the act. Since this Court holds that the proposed amendment at issue is not inconsistent with any other section of the act, and the defendant's answer admitted full compliance with all the procedural requirements of section 98, approval may not be withheld.

The second question for consideration is the propriety of the commissioner's denial of the application of the plaintiff bank to increase its capital stock from $200,000 to $800,000. Section 50 of the act (CL 1948, § 487.50 [Stat Ann 1957 Rev § 23.781])[6] subjects such increase to the approval of the commission, but fails to set forth any specific standard by which such approval is to be granted or denied. In that respect, this section contrasts significantly with

6 See, currently, as amended by PA 1965, No 21 (Stat Ann 1965 Cum Supp § 23.781).—REPORTER.

section 51 (CL 1948, § 487.51 [Stat Ann 1957 Rev § 23.782]) of the act, which sets forth a specific standard for approval by the commission of reductions in capital stock.  The trial court found that the plaintiff bank would need increased capital to strengthen its position so that it could operate in the bigger market in the city of Warren, and that the defendant commissioner was unable to give any good or satisfactory legal reason for disapproval of the increase in capital.  The trial court was satisfied on the preponderance of the evidence that the action of the commissioner was unreasonable.  The action of the trial court in ordering the defendant commissioner to approve the increase of capital stock was proper under section 21 of the act (CL 1948, § 487.21 [Stat Ann 1957 Rev § 23.739]) which gives the circuit court power to make any order which it shall deem to be proper in accordance with the facts and the law.  Proceedings under section 21 of the act are not an appeal from adversary proceedings before an administrative tribunal.  *Bank of Dearborn* v. *State Banking Commissioner* (1962), 365 Mich 567.  The findings of the trial court must be sustained because this Court, in reviewing the record made below, is not convinced that such findings are clearly erroneous.  GCR 1963, 517.1.

The third question presented for review—denial of the application for change of name—is no longer a problem.  The defendant commissioner testified on the stand that he had no objection to the change of the name.

The judgment is affirmed.  No costs are awarded since this case involves a public question.

QUINN, J., concurred with McGREGOR, J.

LESINSKI, C. J. (*dissenting*).  For the reason that I cannot subscribe to the interpretation placed

by my colleague Judge McGREGOR on the language. found in section 39 of the Michigan financial institutions act, I am compelled to dissent. This section reads as follows:

"Any bank may amend its articles of incorporation in the manner set forth hereinafter in section 98 to provide for a change in the place where its operations are carried on to any other place within the State: Provided, That the bank in its new location shall meet the requirements of this act for the establishment of a bank in that location. When the bank has so amended its articles, the commission shall issue to the bank a certificate of change of location." CL 1948, § 487.39 (Stat Ann 1957 Rev § 23.767).

To sustain the trial court's holding that change of location was not subject to the commissioner's approval is to make meaningless the proviso that the bank in its new location shall meet the requirements of this act for the establishment of a bank in that location. To so hold would be to void the express legislative prohibition against establishment of additional banks when such would result in more than 1 bank, or branch bank to each 3,000 population in the city or township where such bank is proposed to be located. This prohibition is found in section 26 of the Michigan financial institutions act, being CL 1948, § 487.26 (Stat Ann 1957 Rev § 23.754), the very section which gives the commissioner authority to pass upon the responsibility and fitness of the applicants, the necessity for such bank, or likelihood of its successful operation.

Section 39 of the Michigan financial institutions act cannot be read standing alone. It must be read in the light of the entire act and the legislative intent expressed therein, and we are compelled to give every part of the act its logical meaning intended

by the legislature.   CLS 1961, §§ 8.3 and 8.3a (Stat Ann 1961 Rev §§ 2.212 and 2.212[1]) reads as follows:

"In the construction of the statutes of this State, the rules stated in sections 3a to 3w[1] shall be observed, unless such construction would be inconsistent with the manifest intent of the legislature.

"3a. All words and phrases shall be construed and understood according to the common and approved usage of the language; but technical words and phrases, and such as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning."

In *Attorney General, ex rel. Zacharias,* v. *Board of Education of City of Detroit* (1908), 154 Mich 584, 589, we find:

" 'It is a cardinal rule of statutory construction that full effect shall be given to every part of the act under consideration.   Every clause and every word is presumed to have some force and meaning.' "

The legislature by adoption of this act sought not only to register banks but to effectively regulate the conduct of the banking business in this State.   The location, capitalization, and fitness of management has been properly submitted to the supervision of the banking commissioner.

The requirement of the statute that to accomplish a change of location the bank, in its new location, shall meet the requirements of this act for the establishment of a bank in that location has meaning. Clearly one must comply with the requirements of CL 1948, § 487.98 (Stat Ann 1957 Rev § 23.851), CL 1948, § 487.40 (Stat Ann 1957 Rev § 23.771), and CL 1948, § 487.50 (Stat Ann 1957 Rev § 23.781)[2]

---

[1] RS 1846, ch 1, §§ 3a–3w, as added by PA 1959, No 189, and amended by PA 1964, No 209.—Reporter.
[2] CL 1948, § 487.50 (Stat Ann 1957 Rev § 23.781), has been amended by PA 1965, No 21 (Stat Ann 1965 Cum Supp § 23.781).

among others, and most certainly with CL 1948, § 487.26 (Stat Ann 1957 Rev § 23.754).

The argument advanced that the commissioner in the past has not required complete refiling in order to allow a bank to move from one nearby area to another within a given city does not adequately support the plaintiff bank's position herein. The commissioner has authority to waive such presentations[3] when he is satisfied from the information contained in his records and investigations made previously by his department.

Further, I cannot subscribe to the narrow interpretation placed by my colleague Judge McGregor upon the duties of the commissioner in CL 1948, § 487.98, *supra,* namely to provide simple ministerial supervision to guarantee full compliance with the procedural requirements of the amendment of articles. This section, like the others of the act, must be read in the light of the entire act and its express purpose.

The real question before this Court is whether or not the commissioner abused his discretion in denying his approval to the changes sought by the plaintiff bank. As stated in *Wyandotte Savings Bank v. State Banking Commissioner* (1956), 347 Mich 33, 46:

"The duties of a public officer with respect to discretion imposed were well summarized by this Court in *G. F. Redmond & Co. v. Michigan Securities Commission,* 222 Mich 1, 5, wherein we held:

" 'While the police power, inherent in the State, is incapable of being defined and subjected to limitations in the abstract, its exercise in any given direction, such as the regulation of trades, occupations and professions, is capable of definite expression, and must, if delegated to a commission or administrative board, define its purpose and the means of attainment thereof, and do this in language leav-

---

3 See CL 1948, § 487.24 (Stat Ann 1957 Rev § 23.752).

ing no wide administrative discretion, and no discretion at all of a legislative nature. The power to carry out a legislative policy enacted into law under the police power may be delegated to an administrative board under quite general language, so long as the exact policy is clearly made apparent, and the administrative board may carry out in its action the policy declared and delegated, but it cannot assume it has been vested with power beyond expressed legislative delegation, and must ever seek its way in the light shed by the legislative mandate. This marks the line between arbitrary officiousness and the exercise of delegated power to carry out a designated policy under the police power.' "

The question of denial of the application for change of name is no longer a problem as the defendant commissioner stated on the stand that he had no objection to the change of name.

The trial court in reviewing the action of the defendant commissioner regarding his disapproval of the increase in capital stock found his action to be unreasonable on the preponderance of the evidence. The findings of the trial court must be sanctioned by our Court on this point, as this Court in reviewing the record made below is not convinced that such findings are clearly erroneous. GCR 1963, 517.1.

The trial court erred in dismissing as unnecessary the approval of the defendant commissioner for change of location and thus ignoring the need for fulfillment of the requirements of CL 1948, § 487.26, *supra.*

This cause should be remanded to the trial court for determination of the question of whether or not the banking commissioner abused his discretion in passing upon the sufficiency of plaintiff bank's application to accomplish the move to a new location.

No costs, public question involved.