SOUTHGATE BANK *v.* STATE BANKING COMMISSIONER.

1. Banks and Banking—Change of Location, Name, Capitalization—Statutes—Equity—De Novo Review.

Plaintiff bank's application for permission to change the location of its main office, change its name, and increase capitalization under the financial institutions act is an equity proceeding, and review of the decision of the banking commissioner is *de novo* in circuit court (CL 1948, § 487.21).

2. Appeal and Error—Financial Institutions Act—Scope of Review.

Judicial review of action taken by the banking commissioner is much broader under the financial institutions act than where review is by certiorari from an administrative agency's order to the Supreme Court (CL 1948, § 487.21).

---

References for Points in Headnotes
[1, 4–7] 10 Am Jur 2d, Banks § 20 *et seq.*
[2, 3] 2 Am Jur 2d, Administrative Law § 610 *et seq.;* 10 Am Jur 2d, Banks § 17.
[8] 5 Am Jur 2d, Appeal and Error § 1009 *et seq.*

3. SAME—SCOPE OF REVIEW UNDER FINANCIAL INSTITUTIONS ACT—
ORDERS.

Chancery court, reviewing action of the banking commissioner
under the financial institutions act, where party claims action
was unlawful or unreasonable, applies equitable as well as
legal principles, may substitute its judgment for that of com-
missioner, and is authorized "to make such other order or
decree as the court shall decide to be proper and in accord-
ance with the facts and the law" (CL 1948, § 487.21).

4. WORDS AND PHRASES—NECESSITY.

Necessity, as used in the financial institutions act, does not
mean an absolute need, but merely a substantial or obvious
need in view of the disclosed relevant circumstances.

5. BANKS AND BANKING—CHANGE OF NAME, CAPITALIZATION, LOCA-
TION.

Denial by banking commissioner of plaintiff bank's application
to increase its capital, change location of bank, and change
name of bank *held*, improper, where there is no showing by
commissioner that a new bank would not be successful and
there is ample testimony of likelihood of success of the new
bank in the new location.

6. SAME—COMMISSIONER'S ACTION—UNREASONABLENESS—BURDEN OF
PROOF.

The burden of proving unlawfulness or unreasonableness of the
banking commissioner's action rests on plaintiff (CL 1948,
§ 487.21).

7. SAME—CHANGE IN NAME, LOCATION, CAPITALIZATION—EVIDENCE.

Findings of trial court that (1) new bank was necessary at
city in which location was sought, (2) was likely to be suc-
cessful, (3) applicants were fit and reasonable persons, (4)
authority to increase capitalization should be granted as re-
quested, and (5) there was no real objection to the change
of name as requested *held*, supported by record in action to
restrain enforcement of State banking commissioner's order
denying application to change name, location, and capitaliza-
tion of bank (CL 1948, §§ 487.21, 487.26, 487.39).

8. COSTS—BANKS AND BANKING—CHANGE IN LOCATION, NAME, CAPI-
TALIZATION.

No costs are allowed in action against State banking commis-
sioner to change location, name, and capitalization of a bank.

Appeal from Court of Appeals, Division 1; Lesin-ski, C. J., Quinn and McGregor, JJ., affirming Wayne, Gilmore (Horace W.), J. Submitted December 29, 1967. (Calendar No. 52, Docket No. 51,486.) Decided March 4, 1968. Rehearing denied May 6, 1968.

3 Mich App 204, affirmed.

Complaint by Southgate Bank, a Michigan banking corporation, against Charles D. Slay, State banking commissioner, to rescind and restrain enforcement of defendant's order denying plaintiff's application to change name of bank, change location of bank, and increase capital stock of bank. Judgment for plaintiff affirmed by Court of Appeals. Judgment reversed and cause remanded to circuit court on appeal to Supreme Court. Upon resubmission, judgments of both courts affirmed.

*William Henry Gallagher* and *Reymont Paul,* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Maurice M. Moule,* Assistant Attorney General, for defendant.

## On Resubmission After Remand.

Per Curiam. The directive order made in *Southgate Bank* v. *State Banking Commissioner* (1967), 379 Mich 1, has been fully executed. The trial judge, acting as chancellor pursuant to section 21 of the financial institutions act (CL 1948, § 487.21 [Stat Ann 1957 Rev § 23.739]), duly received such additional testimony as counsel desired to offer and then prepared a supplemental decision reaching the same result as before. The essence of that supplement,

which we now approve and adopt, appears at end of this opinion.

Upon resubmission the attorney general insists that the banking commissioner's approval, steadfastly withheld thus far, is statutorily requisite to the relief granted plaintiff in circuit and affirmed on appeal (3 Mich App 204). He points to the strengthening language of section 39 as that section has appeared since April 22, 1966 (PA 1966, No 23[1]):

"Sec 39. Any bank may amend its articles of incorporation in the manner set forth hereinafter in section 98 to provide for a change in the place where its operations are carried on to any other place within the State with the approval of the commissioner. If the change of location is to another city or village, the bank shall meet the requirements of this act for the establishment of a bank in that new location.";

and says flatly that "the banking commissioner's approval is necessary for a transfer [of a unit bank] from one location in the State to another location in the State." Upon that thought the attorney general contends that, despite section 21, the circuit court may not validly substitute its judgment for the judgment of the commissioner and that the plaintiff bank has not carried its burden of showing that the commissioner's action was unlawful or unreasonable.

We conclude that this reasoning depends too much upon amended section 39 and loses sight of the controlling function which section 21 assigns to the chancellor when equity's jurisdiction is invoked thereunder. In the particular field laid out by the financial institutions act the principle of limited judicial review of administrative decisions has been, by section 21, decidedly abrogated. The financial institution vexed by action of the commissioner has

---

[1] Amending CL 1948, § 487.39 (Stat Ann 1957 Rev § 23.767).—REPORTER.

received no due process, administrative or otherwise, prior to such action. That is provided for the first time when the institution moves in equity for the complete hearing which section 21 provides and due process requires. Once in equity the parties are entitled to the application of equitable as well as legal principles. The chancellor may indeed, assuming the proofs taken fairly support him, substitute his judgment for that of the commissioner. Such is the clear tonal ring of section 21. That was made amply plain by *Moran* v. *State Banking Commissioner* (1948), 322 Mich 230, 248, 249:

"Clearly the foregoing statute [section 21] authorizes a much broader judicial review than is provided in statutes which limit the review of orders or determinations of administrative agencies to certiorari direct from such agencies' orders or determinations to the Supreme Court. The controlling statute in the instant case provides for suit by original bill of complaint in the circuit court in chancery by an interested party who considers the banking commissioner's determination 'unlawful or unreasonable;' and our review is of the decree entered in the circuit court 'in the same manner as from other chancery suits,' rather than a review of the order of an administrative agency.

"This is not a rate case, nor does it involve review of a regulatory provision by a controlling administrative agency. Instead it involves only plaintiffs' right to engage in the banking business subject to conditions prescribed by the statute.  *  *  *

"As above noted, if an interested party deems the holding of the banking commissioner is 'unlawful or unreasonable,' the controlling statute provides a wide scope of review of orders or determinations of the character under consideration, incident to which the banking commissioner acts in a *quasi*-judicial capacity. If, as we find in the instant case, an erroneous decision is the result of a mistaken inter-

pretation of applicable law, the reviewing court is authorized 'to make such other order or decree as the court shall decide to be proper and in accordance with the facts and the law.' "

What this means in presently controlling substance is that the banking commissioner acts under clear misapprehension both of law and duty when he proceeds under section 39 upon conviction that his power of disapproval is either the last word or is not subject to factual as well as legal test in the courts. It means too that if this view appears to the banking department as authorizing too much judicial control over decisions of the commissioner, the remedy lies exclusively with the legislature by restrictive amendment of section 21.

Judge Gilmore's supplemental decision proceeds in connected context:

"As this court pointed out in its opinion in this matter previously, this statute [section 21] provides for an unusual type of review from an administrative tribunal and authorizes this court to conduct a complete *de novo* hearing in review of the action of the banking commissioner. The burden of proof by the preponderance of the evidence rests on the plaintiff.

"With this in mind, the court feels it can now, on the basis of the record previously made in this case and most recently on remand, make a determination as to whether the action of the banking commissioner in refusing the application was proper or improper. This determination must necessarily be based upon the testimony adduced in this court at both hearings, and the plaintiff must bear the burden of proof by a fair preponderance of the evidence.

"Five basic questions arise.

"1. Is a new bank necessary in the city of Warren?

"2. Is a new bank likely to have success in the city of Warren?

"3. Are the applicants for the new bank fit and responsible applicants?

"4. Is it proper for the applicants to increase their capital stock?

"5. May they change their name as requested?

"Upon review of the entire record, both at the previous hearing, and at the most recent hearing after remand, the court makes the following findings:

"1. There is a necessity for a new bank in Warren. The record made at the previous hearing shows that Warren is a booming, fast-growing community; that it does not have adequate banking facilities compared to other cities of comparable size and nature. The city is one of the fastest growing cities in the State, if not in the Nation. 'Necessity' as used in section 26 of the financial institutions act[2] does not mean an absolute need but merely 'a substantial or obvious need' in view of the disclosed relevant circumstances (*Moran* v. *State Banking Commissioner,* 322 Mich 230 at 244).

"2. There is a likelihood of successful operation of a new bank in Warren, Michigan. The lack of adequate banking facilities determined in the first question before the court clearly points to the likelihood of a successful operation there. On the record made in this court, both on the original hearing and on the remand, there is no showing by the banking commissioner that a new bank would not be successful, whereas there is ample testimony of likelihood of success of the new bank in Warren.

"3. There is absolutely nothing on the record to show that the applicants are not fit and responsible persons. The only directors the commissioner has contended men unfit are William Verhelle and Jerome J. Zielinski. William Verhelle has had a wealth of experience in financial institutions. The commissioner's examiners always found him to be a cooperative person, and there is no showing in the record that he ever failed to comply with any request of

---

[2] CL 1948, § 487.26 (Stat Ann 1957 Rev § 23.754.—REPORTER.

the commissioner for information either at the Public Bank, where he was formerly employed, or at the Southgate Bank. Clearly, there is no basis in the record to show Mr. Verhelle an unfit or irresponsible person.

"Jerome Zielinski has a long background in banking. He served as banking commissioner of the State of Michigan immediately prior to the present banking commissioner. He has served in the banking business for many years and as far as this record is concerned, has always been cooperative in furnishing information and complying with the directives of the State banking commission. There is no showing in this record that he is either irresponsible or unfit. Therefore, the court finds that the applicants are fit and responsible people, and that there is no basis for holding otherwise.

"4. The next finding relates to the increase of the capital stock of the Southgate Bank. In the prior hearing, this court passed upon this matter and held on page 46 of the transcript of the trial court's opinion in the previous hearing as follows:

" 'Therefore, his determination was obviously tied up completely with his refusal to grant a change of location, and therefore I must hold that his action in denying the increase in capitalization was unreasonable. This is doubly so in light of the change in location and the authority to change to Warren. Therefore, I will hold specifically that an order may be presented authorizing the increase in capitalization to $800,000 as requested.'

"Nothing appeared on the remand hearing or subsequent to that time to require a change in this determination. The matter was not raised on remand, and the court finds that there is no need to make such specific findings. The findings on this point made at the earlier hearing are still those of this court.

"5. The final question relates to the change of name to Tri-City Bank. As pointed out in the opin-

ion in the previous hearing, no one has made any real objection to the change of name. Therefore, this court holds that the name may be changed to Tri-City Bank."

These findings are amply supported by the complete record. The attorney general's supplemental brief, filed October 18, 1967, offers no substantial reason for disagreement therewith save presentment of the apparent view of three other circuit judges, seated respectively in the Oakland, Wayne, and Ingham circuits, to determine issues cognizable under section 21, that section 21 does not authorize that kind of original hearing which the *Moran Case, supra,* and *Bank of Dearborn* v. *State Banking Commissioner* (1962), 365 Mich 567, 574, clearly attest Accordingly, the Court of Appeals will release to circuit its remittitur of affirmance dated May 11, 1966, and the judgments of both courts will stand affirmed. No costs.

DETHMERS, C. J., and KELLY, BLACK, T. M. KAVANAGH, SOURIS, O'HARA, ADAMS, and BRENNAN, JJ., concurred.